CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
DEC 28 2006 for C'ville
JOHN F. CORCORAN, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| DEAN M. INMAN,<br><br>                    *Plaintiff,*<br><br>v.<br><br>KLÖCKNER-PENTAPLAST OF AMERICA, INC.,<br>and<br>THE KLÖCKNER PENTAPLAST GROUP,<br>and<br>KLÖCKNER PENTAPLAST PARTICIPATIONS<br>S.À.R.L.,<br><br>                    *Defendants* | CIVIL NO. 3:06cv00011<br><br><br>MEMORANDUM OPINION<br><br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction, filed on March 7, 2006 (docket entry no. 5). For the following reasons, Plaintiff's Motion for Preliminary Injunction will be GRANTED in an order to follow.

## I. BACKGROUND

The factual background of this case was more fully developed in this Court's earlier Memorandum Opinion that granted Defendant's motion to dismiss (docket entry nos. 47, 48). In essence, this action arises as a result of Defendant Klöckner Pentaplast of America, Inc. ("KPA") terminating the employment of Plaintiff Dean Inman ("Plaintiff").

KPA is part of a group known colloquially as "Klöckner Pentaplast Group" ("KPG").[1] In early 2002, third-party financial investors purchased KPG with the expectation of selling it later

---

[1] The Court notes that KPG was originally a named defendant in this action. In his second amended complaint, however, Plaintiff has deleted all mention of KPG. It is unclear at this time whether KPG is a proper defendant in this action; it does not appear that KPG, if it exists, has been served with process.

1

at a profit. Also in early 2002, and as part of an employee incentive program, KPG established Klöckner Pentaplast Participations S.À.R.L. ("KPP") as a holding company in which KPG managers were selectively invited to invest. The hope was that the investors, as KPG managers, would have an incentive to increase the value of KPG before the third-party investors sold it.

Plaintiff purchased $32,700 worth of KPP stock in February 2003. At the time he bought the stock, KPA provided him with a stock overview or model that estimated that the value of the stock he purchased would be worth between $1 million and $1.5 million by 2006 or 2007, the estimated year that KPG would be sold. Plaintiff considered his stock ownership to be a "suitable compensation alternative" to his salary, which he felt was below average. (*See* Second Am. Compl. ¶ 24)

Defendants claim that because Plaintiff's employment contract calls for him to sell his stock in KPP to Defendants upon termination,[2] KPA sent a check to Plaintiff at the end of December 2005 for $41,100, evidently representing the value of Plaintiff's stock. Plaintiff has since refused to cash the check because the amount KPA has offered is a fraction of what Plaintiff believes the stock to be worth. KPA sent Plaintiff a letter in late February 2006 demanding that he sell back his shares of KPP stock for the $41,100 lest KPP divest Plaintiff of the stock. This action followed.

## II. DISCUSSION

Plaintiff moves pursuant to Rule 65(a) of the Federal Rules of Civil Procedure to enjoin Defendants from dispossessing Plaintiff of his KPP stock during the pendency of this action.

As the Supreme Court has stated, it is a "basic doctrine of equity jurisprudence that

---

[2] Plaintiff concedes this point despite the fact that the employment contract submitted by Plaintiff does not address this arrangement. (*See* Second Am. Compl. ¶ 43 ("According to a clause in Inman's employment contract, he is required to sell his ownership in the company back to KPA upon his termination."))

2

courts of equity should not act ... when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992); *O'Shea v. Littleton*, 414 U.S. 488, 499 (1974); *Younger v. Harris*, 401 U.S. 37, 43–44 (1971). It is unclear at this stage whether Plaintiff would have an adequate remedy at law. The Court, therefore, will address the factors relevant to a decision regarding issuance of an injunction.

In deciding whether to grant a preliminary injunction, this Court must consider (1) the likelihood of irreparable harm to Plaintiff if the injunction is denied, (2) the likelihood of harm to Defendant if the injunction is granted, (3) the likelihood that Plaintiff will succeed on the merits, and (4) the public interest. *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 193–96 (4th Cir. 1977). The Court need not determine that each of these factors individually favors the movant, but rather that all four factors, considered in their "flexible interplay," favor the movant. *Id.* at 196.

Moreover, if this Court determines that the likelihood of irreparable harm to the plaintiff outweighs the likelihood of harm to the defendant, then the likelihood-of-success factor is displaced by a lower standard: "It will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." *Blackwelder*, 550 F.2d at 195 (citing *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d at 740, 743 (2d Cir. 1953)).

## A. *Balancing the harms*

The Court is convinced that Plaintiff will suffer harm if the injunction is not issued and that there would be no harm to Defendants should an injunction issue.

Without the injunction, Plaintiff would either be forced to sell his stock for the $41,000

3

offered by Defendants or would be divested of the stock for an indeterminable price — this, despite the allegation that the stock is projected to be worth between $1 million and $1.5 million within the next couple of years.

Additionally, there is no discernable harm to Defendants by prohibiting them from divesting Plaintiff of the stock. Defendants argued that the stock was originally issued to provide an incentive to buyer-managers to make the company more attractive to prospective buyers. They suggest that to allow Plaintiff to continue to hold the stock deprives current managers the opportunity to purchase that stock, thereby lessening the incentive to make the company more attractive. The Court is not persuaded by this argument. Although the additional stock could very well provide an additional incentive to these prospective buyers, the buyers are already employees of the defendant companies. As such, they have other, more valuable incentives to make their company profitable. Things like their jobs, their salaries, their benefits, and the possibility that these employees have already purchased stock as part of the investment plan all lead to the conclusion that any additional stock they could be entitled to purchase would not be such a meaningful incentive that to not allow them to purchase it would mean the defendant companies would cease to be profitable in the eyes of a potential buyer. Monetary harm to Defendants, if any, would be negligible.

The balancing test, therefore, weighs heavily in favor of Plaintiff. *See, e.g., Blackwelder*, 550 F.2d at 196 (noting that "the more important question" for trial courts in determining the balancing-the-harms test than determining whether there is irreparable harm is "the *relative* quantum and quality of plaintiff's likely harm").

### B. *Likelihood of success on the merits*

Because the Court has determined that the likelihood of irreparable harm to Plaintiff

4

outweighs the likelihood of harm to Defendants, the Court will use the lower standard in determining the likelihood-of-success factor. *See Blackwelder*, 550 F.2d at 195. Here, Plaintiff has clearly raised questions going to the merits on his ADEA claim and the Court is convinced there is a fair ground for litigation and, therefore, for more deliberate investigation.

Even assuming there is only a "possible" chance of irreparable injury to Plaintiff in the absence of injunctive relief, there is still a strong probability that Plaintiff could succeed on the merits of his action. Plaintiff's second amended complaint is rife with specific allegations that create a strong inference his employers terminated him, in part, because of his age. Because the Court must construe Plaintiff's complaint in a light favorable to him and because only the pleadings are currently before the Court, this factor, too, weighs in Plaintiff's favor.

## C. Public interest

Finally, Defendants claim that there is a public interest in having contracting parties fulfill their contractual obligations and that here, Plaintiff is attempting to circumvent his contractual obligation to sell his stock back to Defendants. But what Defendants ignore is that they themselves may be shown to have violated the contract by wrongfully terminating Plaintiff's employment. The Court therefore agrees with Plaintiff's observation that the public interest is better served by deterring employers from (1) wrongly discriminating against employees and (2) thereby breaching their contractual obligations than it is by supporting the notion in the abstract that contracting parties fulfill their contractual obligations. This factor, too, then, weighs in Plaintiff's favor.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction to prevent Defendants from divesting him of his stock pending the outcome of this litigation will be

GRANTED in an order to follow.

It is so ORDERED.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

ENTERED: *[signature]*
United States District Judge

*December 28, 2006*
Date

6